1  Cristina C. Arguedas (CSB 87787)
   Ted W. Cassman (CSB 98932)
2  Daniel C. Roth (CSB 270569)
   **ARGUEDAS, CASSMAN & HEADLEY, LLP**
3  803 Hearst Avenue
   Berkeley, CA 94710
4  Telephone:     (510) 845-3000
   Facsimile:     (510) 845-3003
5  E-Mail:        arguedas@achlaw.com
                  cassman@achlaw.com
6                 roth@achlaw.com

7  *Attorneys for Diego Borja and Sara Portilla*

8
   George D. Niespolo (SBN 72107)
9  Jennifer Briggs Fisher (SBN 241321)
   **DUANE MORRIS LLP**
10 One Market, Spear Tower, Suite 2200
   San Francisco, CA 94105-1104
11 Telephone:     (415) 957-3000
   Facsimile:     (415) 957-3001
12 E-Mail:        gdniespolo@duanemorris.com
                  jbfisher@duanemorris.com
13
   *Attorneys for Mason Investigative*
14 *Group, Inc., Eric Mason, and Joseph Parisi*

15                IN THE UNITED STATES DISTRICT COURT

16              FOR THE NORTHERN DISTRICT OF CALIFORNIA

17

18 In re                                    Case no. 11-MC-80087 CRB (NC)
                                            Case no. 11-MC-80110 CRB (NC)
19 DANIEL CARLOS LUSITAND YAIGUAJE, et al.
   _____         **JOINT MEMORANDUM OF DIEGO**
20                                           **BORJA & THE MASON**
   In re                                     **INVESTIGATIVE GROUP, ERIC**
21                                           **MASON, & JOSEPH PARISI IN**
   DR. DIEGO GARCIA CARRION,                 **OPPOSITION TO THE APPLICANTS'**
22                                           **MOTION TO COMPEL**
   _____
23                                           RELATED CASES:
   AND RELATED CASES
24                                           10-MC-80225 CRB
   _____         10-MC-80324 CRB
25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF RELEVANT FACTS .......................................................... 2

III.  ARGUMENT ........................................................................................................ 4

    A.    Diego Borja is entitled to the protections of the work product doctrine and attorney client privilege, which have been rightfully invoked over documents provided to, produced by, and obtained by Mr. Borja's investigative team in anticipation of litigation. ...................................................................................... 4

        1.    Mr. Borja is a party entitled to work product protection. ........................... 5

        2.    The documents protected from disclosure under the work product doctrine were prepared in anticipation of litigation. ................................................. 7

        3.    Mr. Borga's attorney-client privilege claims are valid. ............................. 8

        4.    Each of Mr. Borja's challenged assertions of work product falls squarely within Judge Breyer's August 5th ruling and is grounded in the long-standing law of work product. ................................................................................. 9

            a.    Some of the documents at issue are opinion work product because counsel's act of selecting the documents reveals counsel's mental impressions. .................................................................. 9

            b.    Documents prepared by the Mason Group in the course of conducting its investigation are likewise protected work product ........................................................................................... 10

            c.    Documents may be protected work product even though they are communicated to third parties. ................................................. 12

            d.    Applicants' particular challenges fail ........................................... 12

                (1)    Communications with Third Parties ................................. 12

                (2)    Letters to U.S. District Court ............................................ 14

                (3)    Documents "In the Public Domain" ................................. 14

                (4)    Emails with travel agents ................................................. 15

                (5)    Documents not previously logged by Mr. Borja ............... 15

                (6)    Billing invoices ................................................................ 15

                (7)    Eric Mason's handwritten notes ....................................... 16

                (8)    Documents over which Cheveron has asserted privilege .. 16

i

JOINT MEMORANDUM OF DIEGO BORJA AND THE MASON GROUP IN OPPOSITION TO APPLICANTS' MOTION TO COMPEL;
CASE NOS. 11-MC-80087 CRB (NC) AND 11-MC-80110 CRB (NC)

B.   The Court's August 5th holding that the Applicants have no substantial need for Mr. Borja's work product to determine Wayne Hansen's location applies equally to the documents at issue here.................................................. 16

IV.   CONCLUSION..............................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bayer AG v. Betachem, Inc.*,
    173 F.3d 188 (3rd Cir. 1999) ....................................................................................6

*Beluga Shipping GMBH v. Suzlon Energy, Ltd.*,
    No. C 10-80034 JW (PVT), 2010 U.S. Dist. LEXIS 104705 (N.D. Cal. Sept. 23, 2010)
    ("The Federal Rules of Civil Procedure apply to 28 U.S.C. § 1782.")......................................6

*In re California Public Utilities Commission*,
    892 F.2d 778 (9th Cir. 1989) ...............................................................................7, 10

*In re Convergent Technologies Second Half 1984 Sec. Litigation*,
    122 F.R.D. 555 (N.D. Cal. 1988)................................................................................11

*Doe v. United States*,
    282 F.3d 156 (2d Cir. 2002)......................................................................................11

*Frontier Ref. v. Gorman-Rupp Co.*,
    136 F.3d 695 (10th Cir. 1998) ...................................................................................6

*FTC v. Grolier, Inc.*,
    462 U.S. 19 (1983)..............................................................................................6, 11

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
    357 F.3d 900 (9th Cir. 2004) ...........................................................................1, 8, 10

*Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*,
    669 F. Supp. 2d 1084 (N.D. Cal. 2009) ............................................................... 12-14

*Hartford Fire Ins. Co. v. Garvey*,
    109 F.R.D. 323 (N.D. Cal. 1985)....................................................................... 12-14

*Hickman v. Taylor*,
    329 U.S. 495 (1947)......................................................................................... 10-11

*Holmgren v. State Farm Mut. Auto Ins. Co.*,
    976 F.2d 573 (9th Cir. 1992) ..............................................................................11, 17

*James Julian, Inc. v. Raytheon Co.*,
    93 F.R.D. 138 (D. Del. 1982) .....................................................................................9

*Meyer v. Colavita, USA, Inc.*,
    No. SACV 11–00696–AG, 2011 WL 2457681 (C.D. Cal. June 17, 2011)..............................6

*In re Murphy*,
    560 F.2d 326 (8th Cir. 1977) ..................................................................................6, 9

*Njenga v. San Mateo County Superintendent of Sch.*, No. C-08-0409(EDL)
    2010 U.S. Dist. LEXIS 30615 (N.D. Cal. Mar. 30, 2010).........................................................8

*In re Qwest Communs. Int'l, Inc.*,
    No. 3:08mc93, 2008 U.S. Dist. LEXIS 115845 (W.D.N.C. Jul. 10, 2008) ..............................5

*Richardson v. United States*,
    841 F.2d 993 (9th Cir. 1988) ..................................................................................................5

*Shelton v. American Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ................................................................................................9

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir. 1985).............................................................................................9-10

*United States ex rel. Bagley v. TRW, Inc.*,
    212 F.R.D. 554 (C.D. Cal. 2003) ...........................................................................................9

*United States v. Nobles*,
    422 U.S. 225 (1975)........................................................................................................ 10-11

*United States v. Smith*,
    502 F.3d 680 (7th Cir. 2007) ...............................................................................................11

*Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786 (EMC)
    2004 U.S. Dist. LEXIS 17117 (N.D. Cal. Aug. 23, 2004).......................................................8

*Westinghouse Elec. Corp. v. Republic of Phillippines*,
    951 F.2d 1414 (3rd Cir. 1991) ....................................................................................... 12-14

*Westwood Prods. v. Great Am. E&S Ins. Co.*,
    No. 10-3605 (MLC), 2011 U.S. Dist. LEXIS 84171 (D.N.J. Aug. 1, 2011)...........................12

**Statutes**

28 U.S.C § 1782................................................................................................................................5

28 U.S.C. § 1782(a) .........................................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure, Rule 26..............................................................................5, 6, 9

Federal Rule of Civil Procedure, Rule 45...........................................................................................7

iv

JOINT MEMORANDUM OF DIEGO BORJA AND THE MASON GROUP IN OPPOSITION TO APPLICANTS' MOTION TO COMPEL;
CASE NOS. 11-MC-80087 CRB (NC) AND 11-MC-80110 CRB (NC)

# I.      INTRODUCTION

On August 5, 2011, Judge Breyer issued an order upholding Diego Borja's claims of work product protection over a number of communications between Mr. Borja's counsel and the Mason Investigative Group, which had been hired by Mr. Borja's counsel in anticipation of litigation, and communications between Mr. Borja's counsel and counsel for Chevron Corporation.  Dkt. 78 (under seal); Dkt. 171 (under seal) Related Case No. 10-mc-80225-CRB ("Ord.").  The Court held that, because the communications at issue "are (1) documents (2) prepared in anticipation of litigation (3) by the parties and their agents, they are work product."  Ord. at 7 (footnote omitted).  In reaching its key holding, the Court noted that "the parties do not dispute that those emails authored by investigators are amenable to work product protection, nor could they."  *Id.* (*citing In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.*), 357 F.3d 900, 907 (9th Cir. 2004);( emphasis added).  The Court also held, in crystal-clear terms, that the Applicants, including the Lago Agrio Plaintiffs ("LAP") and the Republic of Ecuador ("ROE"), may not "use their opposing party's protected work product," citing equally unambiguous Ninth Circuit language that the "primary purpose of the work product rule is to prevent exploitation of a party's efforts in preparing for litigation."  *Id.* at 10.

The Court further held that the Applicants had failed to make a credible showing that Mr. Borja's counsel and their hired investigators, the Mason Investigative Group, Inc., Eric Mason and Joe Parisi ("Mason Group"), were engaged in a conspiracy to spirit potential witness Wayne Hansen out of the United States, calling Applicants' allegations "mere 'sneaking suspicions'" and rejecting their application of the crime-fraud doctrine. Ord. at 11.  The Court refused to "accept Applicants' nefarious interpretation of the documents absent some greater showing."  *Id.* at 9.

Finally, the Court held that the Applicants had failed to make a showing of substantial need for the documents at issue because they "have made absolutely no showing that they need these emails in order to locate Hansen."  Ord. at 9.  As the Court noted, Applicants (a) could (and did), "without undue hardship," enlist their own investigators to attempt to find out the underlying facts of Mr. Hansen's whereabouts; and (b) could (and will), "without undue hardship," depose members of the Mason Group to question them under oath about the underlying facts.  *Id.* at 9-10.

The Applicants now bring Motions to Compel production of all documents provided to and/or created by the Mason Group at the direction of Diego Borja and his counsel, completely ignoring the legal and factual findings in the Court's August 5th Order.  See Dkt. 90, 11-mc-80087 ("LAP MTC"); Dkt. 46, 11-mc-80110 ("ROE MTC").  The motions seek a second bite at the same apple, arguing again - based on new but equally unsound reasons - that the Mason Group's communications are not work product and that the Applicants have a substantial need for these documents because they will supposedly provide critical information regarding Mr. Hansen's alleged disappearance from the United States.

The motions also argue that the Mason Group has improperly invoked the attorney-client privilege, that specific work product claims are invalid or waived, and that the Mason Group's privilege log is inadequate.  Again, however, all of these claims fail for reasons already articulated by this Court or by the governing caselaw.

Because Applicants' motions directly contravene this Court's prior order and the relevant jurisprudence, the Applicants' Motions to Compel should be denied in their entirety.  This opposition is being filed jointly by Diego Borja and the Mason Group and, for the sake of efficiency, will address the arguments raised in the motions to compel filed by both the LAP and the ROE.

## II.   STATEMENT OF RELEVANT FACTS

In May and June 2009, Diego Borja and his former business associate, Wayne Hansen, videotaped a series of meetings they had in Ecuador with the judge overseeing the *Lago Agrio* case, along with other government officials.  ROE MTC, at 1.  Mr. Borja turned over his recordings of those meetings to Chevron Corporation, which released them to the public.  *Id.*

The undersigned law firm of Arguedas, Cassman & Headley, LLP ("ACH") was retained to represent Mr. Borja in the context of possible litigation arising from Mr. Borja's participation in the meetings in Ecuador.  *See* Declaration of Cristina Arguedas in Support of Joint Opposition Memorandum ("Arguedas Decl."), ¶ 2.  ACH anticipated that Mr. Borja might become embroiled in criminal or civil litigation.  *Id.,* ¶ 3, 5.  In the context of its representation of Mr. Borja, ACH retained the Mason Group, the licensed private investigative firm that, along with its principals, is the main party to the instant litigation.  *Id.,* ¶ 2, 6.

On October 14, 2009, a judge in the Eastern District of California issued a subpoena for a deposition of Wayne Hansen in response to a § 1782 application filed by the ROE.  Two weeks later, on October 29, 2009, investigator Grant Fine, apparently retained by the ROE, presented the ROE with a nineteen-page report that "sets forth results obtained to date in an investigation of Wayne Hansen."  Dkt. 65-10 (Ex. 13 to ROE's Motion to Clarify).

On April 27 and May 26, 2011, respectively, the LAP and the ROE filed § 1782 Applications seeking depositions and documents from the Mason Group and its principles, Eric Mason and Joseph Parisi, based upon speculation that the Mason Group has discoverable information regarding a criminal conspiracy to spirit Wayne Hansen out of the United States.  *See* Dkt.1; Dkt. 1.[1]  They supplied as exhibits a number of communications over which Mr. Borja had claimed work product protection.

On July 5, 2011, Judge Breyer of this Court held a motion hearing that was focused primarily on Mr. Borja's work product claims regarding documents related to the Mason Group.  On August 5, 2011, the Court issued an order granting the § 1782 applications and upholding all of Mr. Borja's assertions of work product protection.  Dkt. 78 (under seal); Dkt. 171 (under seal).

Before issuing its order granting the § 1782 applications, the Court also ordered the Mason Group to produce a privilege log to the Applicants.  The Mason Group, at the direction of Mr. Borja's counsel, identified the documents protected from disclosure under the work product doctrine and attorney-client privilege and submitted a log to the Applicants on July 15, 2011.  The Applicants raised certain alleged deficiencies in the privilege log and, following the Court order actually granting the applications, the parties agreed to meet and confer to address the Applicants' concerns.

A conference was held on August 8, 2011, during which counsel for Mr. Borja and Chevron reiterated their positions with respect to the privileges asserted and the Mason Group agreed to revise the privilege log in order to resolve certain of the issues raised by the Applicants.  A revised privilege log was submitted to the Applicants two days later.  Then, on August 23, 2011, the Mason

---

[1]  The parties' papers are filed in two dockets simultaneously; in citing various docket entries, this brief will cite first to *In re Application of Yaiguaje, et al.*, 11-MC-80087 CRB (NC), then to *In re Application of The Republic of Ecuador*, 11-MC-80110 CRB (NC).

Group produced non-privileged documents responsive to the subpoenas.  A secondary review of documents was done in advance of the August 23rd production.  In doing so, it was determined that some additional documents were inadvertently left off the original privilege log.  Pursuant to instructions from the attorneys at ACH, these documents were subsequently added to the privilege log by the Mason Group.

Even though the Mason Group went through the process of carefully reviewing all of the documents listed and revising the privilege log in order to address the concerns raised by the Applicants during the meet and confer, the Applicants now raise the same objections first asserted with respect to the original privilege log.  *See e.g.,* LAP MTC, at 8, 10; ROE MTC, at 9, 13.  It appears as though all of the efforts made by counsel for Mr. Borja and the Mason Group to meet and confer with the Applicants in order to avoid court intervention were futile.

## III.   ARGUMENT

### A.   Diego Borja is entitled to the protections of the work product doctrine and attorney client privilege, which have been rightfully invoked over documents provided to, produced by, and obtained by Mr. Borja's investigative team in anticipation of litigation.

Ignoring this Court's holding to the contrary, the Applicants argue that Mr. Borja is not entitled to any work product protection in these § 1782 actions.  In the alternative, the Applicants argue erroneously, but with great fervor, that Mr. Borja's specific claims of work product protection are "frivolous," "beyond the pale," and "audacious[ ]," (LAP MTC at 1, 6, 7), and that the underlying documents "*ipso facto* cannot constitute work product," (ROE MTC at 10).  These claims are unsupportable for the following three reasons:  (1) this Court already held that Mr. Borja is entitled to work product protection, and that Applicants lack a substantial need for the Mason Group's investigative work product vis-à-vis Wayne Hansen; (2) collections of documents culled by counsel constitute opinion work product and as such are afforded near-impenetrable protection; and (3) communications with third parties by an investigator acting as an agent of counsel – otherwise known as an "investigation" – do not invalidate the work product protection.

///

///

---

4

### 1.      Mr. Borja is a party entitled to work product protection.

The Applicants, having already failed once to convince the Court that Mr. Borja is not

entitled to invoke the work product privilege, now advance the theory that the protection is entirely

unavailable because Mr. Borja is not a party to the BIT Arbitration in the Hague.[2]  The Court should

reject this claim on its face because Judge Breyer has already decided that Mr. Borja is entitled to

work product protections. Ord. at 7-8.  "Under the 'law of the case' doctrine, a court is ordinarily

precluded from reexamining an issue previously decided by the same court . . . in the same case."

*Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988).  The Court should not permit the

Applicants to waste the parties' — and the Court's — time and resources by continually relitigating

issues on which they have already lost.

In any event, the Applicants' claim fails on its merits.  The argument relies on the principle

that the work product doctrine, as set forth in Federal Rule of Civil Procedure 26(b)(3), protects only

"documents and tangible things that are prepared in anticipation of litigation or for trial *by or for*

*another party or its representative*."  (emphasis added).  The Applicants assert that, because Mr.

Borja is not a party to the BIT arbitration, he is not a "party" entitled to invoke the work product

privilege under Rule 26(b)(3). But this analysis ignores the crucial fact that Mr. Borja is a party to

the 28 U.S.C § 1782 proceedings under way in this Court.  As the Court is aware, Mr. Borja is either

the subject of or intervenor-of-right in four separate § 1782 application matters before the Court,

which have generated a total of more than 400 docket entries in the past year.

"[T]here can be no doubt that a Section 1782(a) petition is a proceeding[ ] in the United

States district courts."  *In re Qwest Communs. Int'l, Inc.*, No. 3:08mc93, 2008 U.S. Dist. LEXIS

115845 at *7 (W.D.N.C. Jul. 10, 2008) (quotation marks omitted).  Section 1782 provides that

proceedings instituted thereunder shall be conducted "in accordance with the Federal Rules of Civil

Procedure."  28 U.S.C. § 1782(a).  Courts interpret this mandate to mean that the standards for

discovery under the Federal Rules of Civil Procedure govern in proceedings originated by § 1782

---

[2]  Notably, according to the ROE, the Lago Agrio Plaintiffs are not parties to the BIT Arbitration either.  *See* ROE MTC, at 1 ("the only parties to that arbitration are Chevron, Texaco Petroleum Company, and the Republic.")

5

JOINT MEMORANDUM OF DIEGO BORJA AND THE MASON GROUP IN OPPOSITION TO APPLICANTS' MOTION TO COMPEL;
CASE NOS.  11-MC-80087 CRB (NC) AND 11-MC-80110 CRB (NC)

applications.  *See, e.g., Beluga Shipping GMBH v. Suzlon Energy, Ltd.*, No. C 10-80034 JW (PVT), 2010 U.S. Dist. LEXIS 104705 at *7 (N.D. Cal. Sept. 23, 2010) ("The Federal Rules of Civil Procedure apply to 28 U.S.C. § 1782.").  Indeed, the courts specifically apply Rule 26 to determine the propriety of ordering discovery in connection with a § 1782 action.  *See, e.g., Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190-91 (3rd Cir. 1999) (applying the limitation on discovery set forth in Rule 26(b)(2)).

Because Mr. Borja is a party to these § 1782 proceedings, and because such proceedings are governed by the Federal Rules of Civil Procedure, Rule 26(b)(3) protects Mr. Borja's work product.  *See, In re Application Pursuant to 28 U.S.C. § 1782*, 249 F.R.D. 96, 103 (S.D.N.Y. 2008) (finding in the context of a § 1782 proceeding that a document in the possession of a witness – but not a party – to several foreign actions was protected by the work product privilege).  At a minimum, Judge Breyer implicitly recognized these simple principles when he ruled last month that the communications at issue "are (1) documents (2) prepared in anticipation of litigation (3) *by the parties and their agents*...," Ord. at 7 (emphasis added; footnote omitted), and this Court should adhere to the August 5th ruling.

Furthermore, assuming *arguendo*, that some of the work product in question here may not have been created in anticipation of these § 1782 proceedings, that is not a necessary predicate to Mr. Borja's invocation of the privilege.  *See, e.g., FTC v. Grolier, Inc*., 462 U.S. 19, 25 (1983); *Frontier Ref. v. Gorman-Rupp Co*., 136 F.3d 695, 703-04 (10th Cir. 1998); *In re Murphy*, 560 F.2d 326, 334-35 (8th Cir. 1977).

Even if Mr. Borja was not a party to these § 1782 proceedings, he would still be entitled to assert work product protection over the documents at issue under Federal Rule of Civil Procedure 45(c)(3)(A)(iii).  As the Court recently held in *Meyer v. Colavita, USA, Inc*., No. SACV 11–00696–AG, 2011 WL 2457681, *2 (C.D. Cal. June 17, 2011):

> "[a]lthough the plain language of Rule 26(b)(3) solely protects parties to litigation, work product protection may be extended to subpoenaed non-parties through Rule 45(c)(3)(A)(iii), which states that an issuing court must grant a timely motion to quash or modify a subpoena that 'requires disclosure of privileged or other protected matter, if no exception or waiver applies.'"

The Ninth Circuit case on which the ROE relies, *In re California Public Utilities Commission*, 892 F.2d 778 (9th Cir. 1989), did not purport to address either whether a party to § 1782 proceedings or a non-party subpoenaed through Rule 45 may invoke the work product privilege. In fact, the *PUC* case was decided two years <u>before</u> Rule 45 was amended to "clarify and enlarge" the protections afforded to third parties from being required to disclose privileged information. *See* Fed. R. Civ. P. 45, Notes of Advisory Committee on December 1991 Amendment of Rule.

**2.      The documents protected from disclosure under the work product doctrine were prepared in anticipation of litigation.**

The Applicants argue that Mr. Borja is not entitled to assert the work product doctrine because the Mason Group's privilege log does not identify the litigation for which the documents were intended for use. However, as explained above, Mr. Borja retained counsel in order to protect his interests in any and all potential litigation related to his role in exposing the judicial bribery scheme in Ecuador. Understanding the impact of the videotaped records of his meeting in Ecuador and the resulting consequences for both the ROE and LAP, Mr. Borja reasonably believed that he would become the subject of either criminal or civil (or both) proceedings arising out of his activities in Ecuador. While it is true that Mr. Borja was the subject of a criminal investigation in Ecuador that did not result in a formal complaint (ROE MTC, at 3, n.6), it is also true that he did become the subject of two civil actions before this Court, as well as an intervener of right in the present related actions.

Mr. Borja retained counsel in order to protect his interests in connection with litigation he anticipated would come about as a result of his involvement in the meetings with Judge Nunez and other government officials in Ecuador. As counsel to Mr. Borja, the attorneys at ACH determined that it was necessary to locate Wayne Hansen, who was another person who attended all of these meetings with Mr. Borja. Arguedas Decl., ¶ 6. As part of their ongoing representation of Mr. Borja in anticipation of any litigation related to the Ecuador proceedings, including the Section 1782 actions directed at Mr. Borja and the present actions, ACH hired the Mason Group to help locate

Hansen.  *Id.*  All of the documents identified on the privilege log were prepared in anticipation of this litigation by Mr. Borja's attorneys and their investigators.

### 3.  Mr. Borga's attorney-client privilege claims are valid.

The Applicants argue that Mr. Borja's attorney-client privilege claims are invalid because there is no showing that the communications were to or from Mr. Borja or revealed his confidential information.  This argument ignores the fact that the attorney-client privilege extends to confidential communications between attorneys and their agents, including private investigators.  *See Visa U.S.A., Inc. v. First Data Corp.*, 2004 U.S. Dist. LEXIS 17117, at *16-17 (N.D. Cal. Aug. 23, 2004). Mr. Borja need not be an author or recipient of the communication in order for it to be entitled to protection under the attorney-client privilege.

All of the communications between Mr. Borja's counsel and the Mason Group that are listed on the privilege log involved directions given to or reports from the Mason Group related to its investigation.  These types of communications inherently involve confidential information that is communicated for the purpose of enabling Mr. Borja's counsel to provide him with legal advice he sought.

Moreover, any communications between attorneys and private investigators transmitting work product resulting from the investigation are undoubtedly protected under the work product doctrine.  *See In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004)(the attorney work product doctrine applies to documents created by investigators working for an attorney); *see also Njenga v. San Mateo County Superintendent of Sch.*, 2010 U.S. Dist. LEXIS 30615, at *49-50, n.2 (N.D. Cal. Mar. 30, 2010)(reports and email communication authored by private investigators hired to advise counsel are privileged).  Contrary to the arguments made by the Applicants (LAP MTC, at 14, n.17), the email correspondence between counsel for Mr. Borja and the Mason Group wherein they exchanged reports prepared for each other's use are protected communications – and so are the reports themselves.

In particular, the memoranda prepared by Mr. Borja's counsel to provide the Mason Group with background on the Ecuador cases contains confidential client information, as well as the thoughts, opinions and metal impressions of Mr. Borja's counsel.  Likewise, the investigative reports

1  prepared by the Mason Group reflect analysis of Mr. Borja's confidential information and directions

2  given to them by counsel, as well as the results of their own investigation.  This information is

3  clearly protected by both the attorney-client privilege and the work product doctrine.

4      **4.**  **Each of Mr. Borja's challenged assertions of work product falls squarely within Judge Breyer's August 5th ruling and is grounded in the long-standing law of work product.**

5

6      The Applicants make several general allegations that certain types of documents are

7  categorically excluded from the protection of the work product doctrine, and also mount challenges

8  to several of Mr. Borja's and the Mason Group's specific work product claims.  These arguments are

9  all without merit.

10      **a.**  **Some of the documents at issue are opinion work product because counsel's act of selecting the documents reveals counsel's mental impressions.[3]**

11

12      Courts, including this one, have long held that "work product containing attorney's opinions

13  and theories enjoys 'nearly absolute protection' and is to be discovered only in 'rare and

14  extraordinary circumstances.'"  Ord. (Dkt. 187; Dkt. 78) at 8 (quoting *In Re Murphy*, 560 F.2d 325,

15  336 (8th Cir. 1977)).  As this Court observed, "Rule 26 accords special protection to work product

16  revealing the attorney's mental processes."  *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 338,

17  400 (1981)).  When an attorney, in anticipation of litigation, selects particular documents as

18  important, that process indicates the attorney's mental impressions and theories, and courts find such

19  collections to constitute opinion work product.  *Sporck v. Peil*, 759 F.2d 312, 316-17 (3d Cir. 1985)

20  ("[T]he selection and compilation of documents by counsel . . . falls within the highly-protected

21  category of opinion work product"); *see also, e.g., Shelton v. American Motors Corp.*, 805 F.2d

22  1323, 1329 (8th Cir. 1986); *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 563-64 (C.D.

23  Cal. 2003); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982).  Likewise, it is

24  hornbook law that confidential communications between an attorney and investigator that tend to

25  ───────────────
[3]  The LAPs claim disingenuously that Judge Breyer held in his July [August] 5th Order that Mr.
26  Borja's documents are entitled only to the protection of ordinary work product.  See LAP MTC, at 6 n.8.  But the Court's Order and the language it used applied only to the documents before the Court
27  in its review of the Applicants' § 1782 applications.  The Court found those specific documents to be ordinary work product, but did not in any way suggest that Mr. Borja's other documents could not be
28  opinion work product.  Ord. at 8.

disclose the attorney's thoughts and strategy are protected by the work product doctrine. *See United States v. Nobles*, 422 U.S. 225, 238 (1975); *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 907 (9th Cir. 2003) (citing *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1991)).

Some of the documents wherein the Applicants challenge Mr. Borja's assertion of work product protection were collected by counsel and provided to counsel's agent – the Mason Investigative Group – in anticipation of litigation. Declaration of Eric Mason in Support of Joint Opposition Memorandum ("Mason Decl."), ¶ 2. As such, though the documents may not all individually contain attorney work product, their presence in a compilation of documents received by the Mason Group from ACH entitle them to the highest protection.

This principle applies with equal force to publicly-available documents provided by counsel to the Mason Group; the fact that some of the documents are publicly available is irrelevant because the specific collection and presentation of these documents by counsel to its investigators discloses counsels' mental impressions and strategy. *Sporck*, 759 F.2d at 316-17. Accordingly, the ROE's contention that public documents "*ipso facto* cannot constitute work product," (ROE MTC, at 10), and the LAP's contention that these documents "do not merit any protection," (LAP MTC, at 1), are simply incorrect. The Court should reject the Applicants' general assertions that Mr. Borja's invocation of the work product privilege fails in any case in which the document in question is publicly available or was exchanged with a third party. *See, e.g.*, LAP MTC, at 4-9; ROE MTC, at 8-10.

### b. Documents prepared by the Mason Group in the course of conducting its investigation are likewise protected work product

Another frequent theme running throughout the Applicants' papers asserts that communications from, contacts with, and documents obtained from third-party sources cannot constitute work product. Again, this assertion is wrong.

As the Supreme Court observed in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work product doctrine reflects "the general policy against invading the privacy of an attorney's course of preparation," which is "essential to an orderly working of our system of legal procedure." *Id*. at 512.

10

JOINT MEMORANDUM OF DIEGO BORJA AND THE MASON GROUP IN OPPOSITION TO APPLICANTS' MOTION TO COMPEL; CASE NOS. 11-MC-80087 CRB (NC) AND 11-MC-80110 CRB (NC)

Thus, the Supreme Court drew the scope of the privilege broadly to encompass "written materials obtained or prepared by an adversary's counsel with an eye toward litigation." *Id*. at 511 (emphasis added); *see also id*. at 511 (stating that work product is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways"); *Doe v. United States*, 282 F.3d 156, 161 (2d Cir. 2002) (recognizing that counsel's development of factual evidence constitutes work product, and that an adversary should not be permitted to ask a party's investigator, through discovery, "What facts have you discovered?"); *In re Convergent Technologies Second Half 1984 Sec. Litigation*, 122 F.R.D. 555, 557-58 (N.D. Cal. 1988) ("[A] statement a lawyer or an investigator takes from a witness is classic work product and is presumptively protected against disclosure, whether it is included in a separate memorandum written by counsel or no. . . . [A contrary] rule would seriously discourage counsel from doing the investigative homework that Hickman sought to encourage."); Order at 8 (likewise recognizing that factual information may constitute work product).[4]

The "primary purpose of the work product rule" is "to prevent exploitation of a party's efforts in preparing for litigation," Ord. at 10 (citing *Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992), or, as Justice Jackson put it, to stop a party from "litigat[ing] 'on wits borrowed from the adversary,'" *FTC v. Grolier, Inc.*, 462 U.S. 19, 30-31 (1983) (Brennan, J., concurring; quoting *Hickman v. Taylor*, 329 U.S. 495 (1947) (Jackson, J. concurring)). Accordingly, as this Court has already recognized, the fruits of a party's investigation are protected work product. Ord. at 6-7. As the Supreme Court recognized, "[i]t is . . . necessary that the [work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). Similarly, the actions undertaken by counsel's investigators reveal the attorney's thoughts, strategies and mental impressions. The

---

[4]   The ROE cites *United States v. Smith*, 502 F.3d 680 (7th Cir. 2007) for the proposition that work product protection "does not extend to documents created by third parties," ROE MTC, at 9 (Dkt 46), but Smith did not so hold. The *Smith* court found that the work product privilege does not protect communications between a party and a third party because "the privilege extends to the work of the attorney's agents, not the client's agents." *Id*. at 689. The *Smith* court did not purport to render an opinion on the outcome where an investigator, acting at counsel's direction, obtains information from a witness.

Applicants should not be permitted to exploit the efforts of Mr. Borja's legal team, including those of the Mason Group, simply to gain a litigation advantage.

### c.   Documents may be protected work product even though they are communicated to third parties.

The Applicants also argue repeatedly that various documents could not be protected work product because they were disclosed to third parties.  But disclosure to third parties is not a waiver of work product protection unless it substantially increases the likelihood that the document will end up in the hands of a litigation adversary.  *Westinghouse Elec. Corp. v. Republic of Phillippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991); *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328 (N.D. Cal. 1985).  The burden of establishing such a substantial likelihood, and thus a waiver, falls on the party advocating in favor of waiver.  *See, e.g., Westwood Prods. v. Great Am. E&S Ins. Co.*, No. 10-3605 (MLC), 2011 U.S. Dist. LEXIS 84171 at *29 (D.N.J. Aug. 1, 2011).  In no instance have the Applicants met that burden.

### d.   Applicants' particular challenges fail

The Applicants challenge various particular invocations of the work product privilege, asserting that the documents in question cannot be protected for various reasons.  The documents at issue here were created (or communicated) in anticipation of litigation and during the course of the Mason Group's investigation on behalf of Mr. Borja's counsel.  Arguedas Decl., ¶ 6.  The Applicants' claims are misguided attempts to exploit Mr. Borja's efforts in preparing for litigation and should be rejected.

### (1)   Communications with Third Parties

Applicants assert that the Mason Group's communications with third parties are not work product.  ROE MTC, at 8-9; LAP MTC, at 5-7.  Their arguments rely principally on the general assertion that communications with a third party may not be considered work product — an assertion we have shown to be false.  *See* Section I.A.4.c., *supra*.  Permitting the Applicants to obtain these communications would undermine the very purpose underlying the work product doctrine: to "prevent exploitation of a party's efforts in preparing for litigation."  Ord. at 10.  The emails between

1  the Mason Group and third parties were either prepared by or obtained by counsel's agent in

2  anticipation of litigation, and thus are entitled to work product protection.

3       Likewise, as discussed above, documents provided by counsel or counsel's agent to a third

4  party may retain work product protection so long as there is no substantial likelihood that the

5  disclosure will result in the documents falling into the hands of an adversary.  *Westinghouse Elec.*

6  *Corp.*, 951 F.2d at 1428; *Great Am. Assur. Co.*, 669 F. Supp. 2d at 1092; *Hartford Fire Ins. Co.*, 109

7  F.R.D. at 328.  In particular, LAPs' contention that Mr. Borja could not expect the emails with

8  Charles Harris to remain undisclosed, (LAP MTC, at 6), lacks any support.  As is clear from the

9  privilege log, the Mason Group contacted Mr. Harris in the course of its investigation on Mr. Borja's

10  behalf.  Contrary to the LAPs' contention, (LAP MTC, at 6), Mr. Harris's past relationship to Wayne

11  Hansen has nothing to do with whether these communications could be expected to be kept out of

12  the hands of Mr. Borja's legal adversaries.  And, if it is "beyond the pale" for Mr. Borja to expect the

13  conversations to have remained between the Mason Group and Mr. Harris, (LAP MTC, at 6), the

14  LAPs should be able to produce evidence that Mr. Harris disclosed them.

15       Similarly, the Applicants have not met their burden to show that communications with the

16  other third parties they identify, including Joe Serrano, Pierre Merkl, Mary McNamara and John

17  Mason,  were likely to be disclosed to Mr. Borja's adversaries.  The Applicants' demand for these

18  emails is simply another raw attempt to litigate on the "wits" of an adversary.[5]

19       The Applicants challenge the assertion of privilege over communications between the Mason

20  Group and these third parties because their relationship to Mr. Borja was not described in detail.

21  However, the Applicants ignore the fact that the Mason Group revised its privilege log to include a

22  list of these individuals, as well as their affiliations.

23       Joe Serrano and Pierre Merkl are investigators who were hired by the Mason Group at the

24  direction of Mr. Borja's counsel to conduct specific, targeted searches for information about Hansen.

25  Mason Decl., ¶ 4.  Their work and any communication about the results of their work is protected on

26

27  [5]  Counsel's withdrawal of a work product claim with respect to one email from Wayne Hansen to
    Eric Mason and Charles Harris, see ROE MTC, at 9, has no bearing on the different communications
28  at issue here.

13

JOINT MEMORANDUM OF DIEGO BORJA AND THE MASON GROUP IN OPPOSITION TO APPLICANTS' MOTION TO COMPEL;
CASE NOS.  11-MC-80087 CRB (NC) AND 11-MC-80110 CRB (NC)

1    the same basis as any of the Mason Group's investigative work.

2    Mary McNamara has been identified as an attorney at Swanson & McNamara LLP. She was

3    an attorney who was in contact with Mr. Borja's counsel and the Mason Group regarding potential

4    representation of Hansen. The LAPs, while trying to make the argument that the relationship with

5    Ms. McNamara was not disclosed, admit that they are aware of this information already. *See* LAP

6    MTC, at 7. Any argument in support of further disclosure falls flat.

7    Despite the ROE's assertion to the contrary, John Mason, was clearly identified in the

8    Appendix to the Mason Group's privilege log as being employed by the Mason Group. He

9    communicated with Eric Mason about the status of the investigation and particular facts related to

10   investigative strategy. These communications are clearly protected from disclosure given John

11   Mason's relationship with the Mason Group and the nature of his communications with Eric Mason.

12                          **(2)      Letters to U.S. District Courts**

13   Again seeking to exploit the work product of Mr. Borja's investigators, the LAPs attack what

14   they call Mr. Borja's "audacious[ ]," (LAP MTC, at 7) and "outrageous," (LAP MTC, at 8),

15   withholding of letters sent to various U.S. District Courts. The Applicants' use of inflammatory

16   rhetoric does not change the law: these letters constitute opinion work product because they indicate

17   what counsel's investigators were interested in learning while doing their investigative work.

18   Again, as discussed, the fact of "disclosure" to a third party is not dispositive. The

19   Applicants have not shown that there was any substantial risk that the work product would be

20   disclosed to Mr. Borja's adversaries. *Westinghouse Elec. Corp.*, 951 F.2d at 1428; *Great Am. Assur.*

21   *Co.*, 669 F. Supp. 2d at 1092; *Hartford Fire Ins. Co.*, 109 F.R.D. at 328.

22                          **(3)      Documents "In the Public Domain"**

23   Applicants also rail against Mr. Borja's work product claims concerning a Treaty between

24   the United States and Ecuador, court orders, and courtroom minutes. ROE MTC, at 10. But the

25   documents are, in fact, entitled to protection.

26   Some of these documents, Bates stamped MASON 00379-403, were collected by Mr. Borja's

27   counsel and provided to the Mason Group to provide it relevant background and focus the

28   investigation. Mason Decl., ¶ 2. As discussed above in Section I.A.4.a., *supra*, such documents

selected by counsel are opinion work product and entitled to work product protections.

Others of these "public documents" were obtained by the Mason Group in the course of its investigation.  Mason Decl., ¶ 3.  Again as discussed above, in Section I.A.4.b., *supra*, such fruits of the investigation are work product because they reveal the particular subjects in which Mr. Borja's counsel was interested.

### (4)    Emails with travel agents

The Applicants challenge the application of the work product privilege to the Mason Group's communications with travel agents.  LAP MTC, at 9-10.  But these communications are opinion work product.  They indicate where Mr. Borja's investigators were planning to travel and when — facts that clearly show the mental processes of Mr. Borja's counsel concerning the types of leads counsel believed were important to track down.  This is core attorney work product, and not subject to disclosure.  *See* Ord. at 8 (documents that contain the legal theories and impressions of counsel are opinion work product).

### (5)    Documents not previously logged by Mr. Borja

Applicants argue that Mr. Borja cannot claim work product protection over two types of documents that were not previously logged by Mr. Borja:  (1) a draft statement by Mr. Borja, and (2) emails sent between Mr. Borja's counsel and the Mason Group.  ROE MTC, at 10-11 (Dkt. 46).  To the extent any documents were not logged by Mr. Borja, they were not in Mr. Borja's possession when he received the Applicants' subpoenas.  All documents in Mr. Borja's possession were either produced or logged at the appropriate time.  The Applicants arguments do not account for the fact that Mr. Borja's counsel and the Mason Group may not have retained the same communications.

### (6)    Billing invoices

The Applicants argue that the billing records submitted by the Mason Group to Mr. Borja's counsel should have been redacted and produced because redacted versions have already been produced in the related cases by Mr. Borja.  This issue was never raised during the meet and confer session between the parties.  If it had been, the Applicants could have requested that the Mason Group produce redacted versions of the invoices and avoided burdening the court with overstated arguments over yet another inconsequential issue.  The Mason Group is not required to reveal any

15

JOINT MEMORANDUM OF DIEGO BORJA AND THE MASON GROUP IN OPPOSITION TO APPLICANTS' MOTION TO COMPEL;
CASE NOS.  11-MC-80087 CRB (NC) AND 11-MC-80110 CRB (NC)

1  information related to the nature of the services rendered or any details contained in the invoices that

2  may be covered by the attorney-client privilege or work product doctrine.  However, the Mason

3  Group is willing to produce redacted versions of the invoices.

4  **(7)     Eric Mason's handwritten notes**

5          The Applicants also raise, for the first time, that Mr. Borja's assertion of work product

6  protection over handwritten notes created by Eric Mason is invalid because the date on which the

7  notes were taken is not indicated.  ROE MTC, at 12.  Again, this is an issue that could have easily

8  been resolved during the meet and confer session between the parties, but the ROE specifically

9  chose to wait and raise it in the motion to compel, in violation of its pre-filing meet and confer

10  obligations.  The handwritten notes are not dated, otherwise a date would have been indicated on the

11  privilege log.  However, the notes refer directly to interviews conducted by Eric Mason during the

12  course of the investigation he performed at the direction of Mr. Borja's counsel.  As such, they were

13  prepared in anticipation of litigation and are properly protected from disclosure under the work

14  product doctrine.

15  **(8)     Documents over which Chevron has asserted privilege**

16          The ROE resists Chevron's assertions that several of the Mason Group's documents are

17  protected by Chevron's own work product protections.  ROE MTC, at 13-15.  The Mason Group and

18  Mr. Borja believe that Chevron's assertions are proper, especially given the fact that the Court has

19  already recognized Chevron's work product protection over the three documents at issue.

20  **B.    The Court's August 5th holding that the Applicants have no substantial need for
       Mr. Borja's work product to determine Wayne Hansen's location applies**

21  **equally to the documents at issue here.**

22          Again disregarding this Judge Breyer's August 5th Order, the Applicants insist that they have

23  a substantial need for Mr. Borja's work product in order to help get information about Mr. Hansen's

24  location and his whereabouts in late 2010.  ROE MTC, at 12-13; LAP MTC, at 1-2.  Whether or not

25  these documents shed any light on that subject, simply reiterating this "substantial need" - or

26  recasting the same need in slightly different terms - is inappropriate.  If the Applicants were

27  dissatisfied with Judge Breyer's conclusion that they have no substantial need to obtain Mr. Borja's

28  work product in order to investigate Mr. Hansen, *see* Ord. at 9-10, they should have filed a motion

1    for reconsideration.  This renewed effort to litigate the issue should be rejected on its face.

2            Furthermore, a detailed investigative report the ROE itself submitted to this Court from a

3    year before the Mason Group was allegedly investigating Mr. Hansen, demonstrates that Applicants

4    have no legitimate need for discovery from the Mason Group to get information regarding Hansen's

5    whereabouts.  *See* Dkt. 65-10, 10-MC-80225 (Ex. 13 to ROE's M to Clarify — a 19-page report

6    from an investigator dated October 29, 2009, that "sets forth results obtained to date in an

7    investigation of Wayne Hansen … .").  In fact, it appears the Applicants had a long head start in

8    determining the facts they now claim can only be determined by digging into the fruits of Mr.

9    Borja's investigation in anticipation of litigation.  The Applicants are transparently attempting to use

10   the work product of an adversary to their own advantage in a case, which is an abuse of the

11   discovery process and of attorney work product.  Ord. at 10; *Holmgren*, 976 F.2d at 576.

12   **IV.     CONCLUSION**

13           For the foregoing reasons, and for all the reasons set forth by Chevron Corporation in its

14   Memorandum in Opposition, the Motions to Compel filed by the ROE and LAP should be denied.

15

16   Dated:  September 14, 2011                    _____/s/_____Cristina C. Arguedas_____
                                                   Cristina C. Arguedas
17                                                 Daniel C. Roth
                                                   ARGUEDAS, CASSMAN & HEADLEY LLP
18                                                 *Attorneys for Diego Borja*

19

20   Dated:  September 14, 2011                    _____/s/_____George D. Niespolo_____
                                                   George D. Niespolo
21                                                 Jennifer Briggs Fisher
                                                   DUANE MORRIS LLP
22                                                 *Attorneys for Mason Investigative Group, Inc., Eric*
                                                   *Mason, and Joseph Parisi*

23

24   **Attestation: The filer of this document attests that the concurrence of the other signatories**
     **thereto has been obtained**

25

26

27

28