Eric W. Bloom (admitted *pro hac vice*)
Gregory L. Ewing (admitted *pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
Telephone:   (202) 282-5000
Facsimile:   (202) 282-5100
ebloom@winston.com
gewing@winston.com

Attorneys for Applicants,
Dr. DIEGO GARCÍA CARRIÓN,
THE ATTORNEY GENERAL OF
THE REPUBLIC OF ECUADOR, and
THE REPUBLIC OF ECUADOR

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Application of:<br><br>Dr. DIEGO GARCÍA CARRIÓN, the Attorney General Of The Republic of Ecuador, and the REPUBLIC OF ECUADOR,<br><br>Applicants,<br><br>For the Issuance of Subpoenas Under 28 U.S.C. § 1782(a) for the Taking of Depositions of and the Production of Documents by Mason Investigative Group, Inc., Eric Danford Mason, and Joseph Phillip Parisi for Use in a Foreign Proceeding | **Case No. 11-MC-80110-CRB-NMC**<br><br>**APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH** |

**Related Cases:**
- *In re Application of Yaiguaje, et al.*, C-11-MC-80087 CRB ("*Yaiguaje Mason 1782*")
- *In re Application of Yaiguaje, et al.*, C-10-MC-80324 CRB ("*Yaiguaje Borja 1782*")
- *In re Application of The Republic of Ecuador, et al.*, C-10-MC-80225 CRB ("*ROE Borja 1782*")
- *In re Application of the Republic of Ecuador, et al.*, 11-mc-80171-CRB ("*ROE Kelsh 1782*")
- *In re Application of the Republic of Ecuador, et al.*, 11-mc-80172-CRB ("*ROE Exponent 1782*")

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

I.   This Court Does Not Have Jurisdiction To Reconsider Judge Breyer's Order Granting The Republic's Section 1782 Application ..................................................................3

II.  Chevron's Claims Against Steven Donziger Are Pending Appeal............................................4

III. The Republic Is Not A Party To The RICO Trial Between Chevron And The Lago Agrio Plaintiffs' Lawyers, Nor Is It A Party To The Lago Agrio Action ................................5

IV.  Depriving The Republic Of Discovery Already Ordered By Judge Breyer Would Violate The Republic's Rights to Due Process..........................................................................6

V.   Judge Kaplan Was Prevented By Chevron And By The Lago Agrio Plaintiffs' Lack Of Resources From Seeing A Significant Amount Of Evidence..............................................7

VI.  Chevron's Predecessor's Pollution Of The Oriente Is Very Real And Continues To Cause Harm, Debunking Any Claims That The Republic Acts In Bad Faith By Defending Its Courts' Consideration Of The Environmental Claims.......................................9

VII. Chevron's Allegations Of The Republic's Bad Faith Are Baseless .......................................11

VIII. Mason's Argument That Discovery Should End Because A Deposition Was Taken Should Be Rejected..................................................................................................................13

CONCLUSION.............................................................................................................................13

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

i

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blue Angel Films v. First Look Studios, Inc.*,
 2013 WL 5405470 (S.D.N.Y. Sept. 25, 2013) ................................................................... 3

*Chevron Corp. v. Donziger*,
 No. 11-cv-00691, Dkt. 1552 (S.D.N.Y. Oct. 15, 2013) ................................................... 11

*Chevron Corp. v. Naranjo*,
 667 F.3d 232 (2d Cir. 2012) ............................................................................................. 6

*Chevron Corp. v. Steven Donziger*,
 974 F. Supp.2d 362 (S.D.N.Y. 2014) ..................................................................... 1, 4, 7, 9

*In re Diego Garcia Carrion*
 (Mason), 10-mc-80225 (Aug. 5, 2011) ............................................................................. 3

*In re Veiga*,
 746 F.Supp.2d 8 (D.D.C. 2010) ........................................................................................ 4

*Lindsey v. Normet*,
 405 U.S. 56 (1972) ............................................................................................................ 6

*Parklane Hosiery Co., Inc. v. Shore*,
 439 U.S. 322 (1979) .......................................................................................................... 4

*Republic of Ecuador v. Connor*,
 708 F.3d 651 (5th Cir. 2013) ............................................................................................ 6

*Underhill v. Hernandez*,
 168 U.S. 250 (1897) .......................................................................................................... 6

**STATUTES**

28 U.S.C. § 636(b)(1) ............................................................................................................. 3

28 U.S.C. § 1782 ........................................................................................................... 2, 3, 4, 6

ii

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## INTRODUCTION

Over three years ago the Republic brought the underlying discovery action against the Mason Group to obtain documentary and testimonial evidence concerning Diego Borja's and Chevron's actions relating to Diego Borja and Wayne Hansen's attempts to entrap an Ecuadorian judge. The Republic sought that evidence not for use in the Lago Agrio Litigation—the Republic was never a party to that action—but rather to defend itself against claims brought by Chevron in a bilateral investment treaty arbitration ("BIT Arbitration").

Discovery from Borja has been integral in exposing the lie of Chevron's allegations about the Ecuadorian courts and its judges. Contrary to Chevron's claims both in the international press[1] and to the arbitral tribunal,[2] Borja's videos did *not* "reveal a $3 million bribery scheme." Instead, as Judge Chen concluded: "[T]here was no hint in there about [the Ecuadorian judge] taking a bribe or payoff, and I didn't see anything in the two transcripts provided to me on that."[3]

The discovery granted by Judge Breyer and then-Magistrate Chen instead showed that Borja, a long-time contractor for Chevron, (1) met with Chevron's attorneys in San Francisco on June 18, 2009; (2) immediately returned to Ecuador; and then (3) orchestrated yet another illegally-recorded meeting in an apparent effort to create evidence to delay final adjudication of the case.[4] Investigation has likewise cast doubt on Borja's credibility as a witness for Chevron. In recorded conversations with a childhood friend, Borja boasted he had evidence that, if disclosed, would cause *Chevron* to lose the underlying Ecuadorian litigation; Borja likewise conceded that the Chevron

---

[1] Ex. 1, Chevron Press Release, *Videos Reveal Serious Judicial Misconduct and Political Influence in Ecuador Lawsuit* (Aug. 31, 2009) at 1. Citations to "Ex." are to the exhibits to the concurrently filed Declaration of Gregory L. Ewing.

[2] Ex. 2, Chevron Corporation's and Texaco Petroleum Company's Notice of Arbitration (Sept. 23, 2009) ¶¶ 52-53); *see also* Ex. 3, Chevron's Merits Memorial ¶ 14 (claiming there is videotape evidence of Judge Nuñez being bribed).

[3] Ex. 4, Transcript of Proceedings (Nov. 10, 2010), *In re Application of the Republic of Ecuador re Diego Borja*, No. C 10-00112 (N.D. Cal.) at 38:19-39:5

[4] Ex. 5, Letter from T. Cullen to Dr. D. García Carrión (Oct. 26, 2009) at 8. Additionally, information was gathered through the deposition of Diego Borja and his document discovery, both of which are currently covered by a protective order.

1

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

laboratories were not independent as Chevron had represented.[5]  Most troubling, Borja has admitted to illicitly swapping out contaminated soil samples for clean soil samples on Chevron's behalf.[6]

In light of this evidence, all of which is currently before the arbitral tribunal, Chevron now generally avoids repeating its discredited allegations.  But this evidence has proven important not only to disprove Chevron's allegations regarding the supposed bribery by Borja and Hansen, but also to establish a pattern of questionable corporate behavior that bears directly on Chevron's credibility as a litigant.  Just as Borja was forced to admit that he had received in excess of $2 million of financial benefits in the first 18 months of his service as a witness for Chevron,[7] the Company has been forced to concede an even more generous pay-out to another of its witnesses.[8]  Do payments of this kind by a U.S. corporation offend the sensibilities of this or any other court?  Would it offend the sensibilities of the court had the Republic engaged in such conduct?

This Court has asked the parties to brief the question of "whether [] bad faith should bar or limit the remaining discovery sought in these proceedings."  As to the Republic, the answer is clearly no.  A decision by a first-instance court, which has since been appealed, in a case in which the Republic is neither a party nor was afforded an opportunity to be heard, is no basis to deny the Republic discovery in aid of a *different* proceeding, a proceeding in which the Republic has asserted no claims but instead is *defending* claims asserted by Chevron.  It cannot be that due process grants to only one side in a dispute the right to discovery, while denying the same rights to the other.  It is now the Republic's due process rights that are at stake, rights that may not be stripped by judicial fiat.

---

[5]   Dkt 46-8, Skype Tr. (Oct. 1, 2009) at 6-7 (emphasis added).

[6]   Ex. 7, Statement of Santiago Ernesto Escobar, submitted in Preliminary Investigation No. 107-2009-DRR, Office of the General Prosecutor of Ecuador (June 8, 2010) at 2-3; Ex. 8, *Amazon Defense Coalition, Key Witness Testifies that Chevron Paid Bribes, Switched Soil Samples in $27b Ecuador Lawsuit*, petroleumworld.com (June 11, 2010) at 2.

[7]   Ex. 9, Summary of Chevron Payments to or on Behalf of Diego Borja.

[8]   Ex. 10, Republic of Ecuador Rejoinder on the Merits (Track 2) (Dec. 16, 2013) at § I.D.

2

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**I.     This Court Does Not Have Jurisdiction To Reconsider Judge Breyer's Order Granting The Republic's Section 1782 Application**

More than three years ago Judge Breyer granted the Republic's application under 28 U.S.C. § 1782, finding that the Republic had satisfied the three statutory criteria: "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a foreign tribunal; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *In re Diego Garcia Carrion* (Mason), 10-mc-80225 at 16 (Aug. 5, 2011) (Dkt. 171) (citing 28 U.S.C. § 1782).  He also found that the four discretionary factors weighed in favor of granting the Republic's application.  *Id*. at 20. Judge Breyer's rulings here were consistent with his earlier observations in a related 1782 Application where he noted that the serious allegations at issue in the Treaty Arbitration militate "in favor of disclosure."  Sept. 23, 2011 Hr'g at 15:2-4 held in *In re Republic of Ecuador* (Kelsh), 3:11-mc-80171 (Dkt 36).

In a related proceeding seeking discovery from Diego Borja, then-Magistrate Judge Chen opined that "bad faith" may be an appropriate factor to consider when considering *an application* under 28 U.S.C. § 1782, but neither Chevron nor the Mason Group[9] provide any authority for the proposition that "bad faith" is an appropriate factor to consider in assessing *a motion to compel*, especially where, as here, the narrow issue is whether documents may properly be withheld on the basis of privilege.

Moreover, this Court's jurisdiction is limited by the order of reference from the district court; reconsideration of Judge Breyer's three-year order granting the Republic's application is beyond that limited scope.  *See generally* 28 U.S.C. § 636(b)(1); *see also Blue Angel Films v. First Look Studios, Inc.*, 2013 WL 5405470 at *1 (S.D.N.Y. Sept. 25, 2013).  By his order of Sept. 2, 2011, Judge Breyer ordered that "the Motion to Compel is referred to Magistrate Judge Nathanael Cousins to be heard and considered at the convenience of his calendar."  Order of Reference, 11-mc-80110 at 1 (Sept. 2, 2011) (Dkt 47).  Judge Breyer's referral did not grant this Court general jurisdiction over this Application or jurisdiction to reconsider his order granting the Republic's application.  As a

---

[9]     Despite two orders providing him an opportunity to be heard in this proceeding, Diego Borja has filed nothing.

3

result, this Court does not have authority to resolve, in effect, a *sua sponte* motion to reconsider the district court's grant of the Republic's Section 1782 application.

## II.     Chevron's Claims Against Steven Donziger Are Pending Appeal

This Court's May 22, 2014 Order Requesting Briefing cites to and relies upon Judge Kaplan's recent decision in *Chevron Corp. v. Steven Donziger*, 974 F. Supp.2d 362 (S.D.N.Y. 2014), for the proposition that "the course of justice was perverted" in the underlying case between the indigenous plaintiffs and Chevron, and that the decision "was obtained by corrupt means."  Order, No. 11-mc-80110-CRB (NC), Dkt. No. 68 (N.D. Cal. May 22, 2014) at 2.  But this Court cannot treat the decision of a first-instance court as a final decision when that case is on appeal, most especially against the Republic, a nonparty in that action, and in circumstances where a panel of the Second Circuit previously reversed the same trial court, unanimously, in the same dispute.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979).  Should the district court's decision be reversed, this Court will have denied discovery rights based on vacated findings.

For its part, the Republic agrees that courts should not countenance misconduct and that courts should not stand idly by while they are used by parties to commit fraud.  And that is exactly why the Republic continues to defend its courts and legal system in the BIT Arbitration—the forum Chevron chose to have those issues adjudicated.  Time will tell who has committed fraud and whose courts were manipulated by whom to support what fraud.  But that is not a question presented in this proceeding.  Indeed, courts around the country are virtually uniform in finding that it is *not* the place of a 1782 court to reach the merits of the underlying dispute.  *In re Veiga*, 746 F.Supp.2d 8, 13 (D.D.C. 2010) ("Notwithstanding the parties' all-too-frequent detours, these proceedings are limited to the narrow question of whether the Applicants have properly invoked the statutory relief contemplated by § 1782(a) — i.e. whether discovery should be allowed in this District for potential use in proceedings abroad.").  Faced with a similar motion to compel documents and allegations of fraud, the District Court of Colorado wrote:  "The Court, in this order, restricts its adjudication to the legal issues of privilege in this discovery proceeding, without intruding into the merits that are committed to the jurisdiction of the Ecuadorian trial court."  *Chevron Corp. v. Stratus Consulting*, Inc., No. 1:10-cv-00047-MSK-MEH, 2010 WL 3923092, at *5 (D. Colo. Oct. 1, 2010).  In

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Tennessee, the District Court ruled similarly, "[t]he simple fact remains, however, that this proceeding is limited to the statutory relief provided in § 1782—namely, discovery for use in a foreign proceeding." *In re Application of Chevron Corp.* (Mark Quarles), No. 3:10-cv-00686 at 2-3 (D. Tenn. Sept. 21, 2010).

There is no precedent for this Court to pre-judge the merits of Chevron's claims against the Republic, or the Republic's defenses to those claims, that are currently and actively being litigated in the BIT Arbitration. With respect, it is not this Court's place to step into the shoes of the tribunal.

### III. The Republic Is Not A Party To The RICO Trial Between Chevron And The Lago Agrio Plaintiffs' Lawyers, Nor Is It A Party To The Lago Agrio Action

Not only has the RICO action not reached a final conclusion—a conclusion is not expected for several years more—but, even more importantly, it is neither a case in which the Republic is a party nor in which the Republic has been afforded any rights to participate.[10]

The RICO action presented the district court, and now the Second Circuit, with numerous questions concerning the conduct of American lawyer Steven Donziger and others in the course of their representation of a group of indigenous Ecuadorian plaintiffs pursuing a lawsuit against Chevron for environmental pollution in Ecuador's Oriente region. It did not and could not determine the rights or obligations of the Republic, a *nonparty* to that litigation. It neither serves as *res judicata* as to the Republic nor otherwise imposes any liability upon the Republic.

The Republic is a sovereign State. What is more, it is a constitutional democracy and a United States ally and trading partner. Like virtually all Latin American countries, the Republic has undertaken nearly two decades of aggressive legal reforms and social change to modernize its courts and increase the quality, independence, and transparency of its judicial system.[11] As a result, the Republic is experiencing unprecedented economic growth and legal and political stability. The

---

[10] The Republic has requested leave to submit an *amicus* brief to the Second Circuit, *Chevron Corp. v. Donziger*, Case No. 14-826-cv (2d Cir.), but played no role in the underlying district court action.

[11] As explained more fully in the Republic's Second Circuit amicus brief, to be filed by the Republic on July 8, 2014, the district court did not have information before it regarding certain matters of Ecuadorian legal procedure or any of the judicial reforms that have only served to buttress the courts' independence and competence. The district court never bothered to solicit the views of the Republic.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Republic has a strong, legitimate interest in ensuring that its judiciary—which Chevron long championed as a preferable forum to a U.S. court—is afforded the same respect any State, including the United States, would expect from a sister sovereign. As the U.S. Supreme Court has long held, "[e]very sovereign state is bound to respect the independence of every other sovereign state[.]" *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). The Second Circuit, too—in litigation related to the RICO action, no less—has recognized that "[i]t is a particularly weighty matter for a court in one country to declare that another country's legal system is so corrupt or unfair that its judgments are entitled to no respect from the courts of other nations." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).

The Ecuadorian Plaintiffs sought 1782 discovery in this case in aid of the Lago Agrio case. But the Republic has sought discovery in this Court *not* in aid of the Lago Agrio case, but in aid of a *different* foreign proceeding, the BIT Arbitration. And, to be clear, it was not the Republic that started the Arbitration; Chevron did. To permit Chevron to commence an arbitration against the Republic and obtain unparalleled discovery in U.S. courts in aid of its arbitral claims, while somehow restricting or eliminating altogether the Republic's discovery rights because this or any court has pre-judged the merits of Chevron's claims or the Republic's defenses in the BIT Arbitration, would turn justice on its head. Chevron cites to no precedent in support of such a proposition. If this Court were to do as Chevron now suggests, the Court would be inviting clear error.

### IV. Depriving The Republic Of Discovery Already Ordered By Judge Breyer Would Violate The Republic's Rights to Due Process

It is black letter law that "[d]ue process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972). The Republic has successfully used the discovery ordered by Judge Breyer for exactly that purpose and intends to use any fruit of the pending motion to compel for the same. By now denying the Republic access to that discovery already granted by Judge Breyer, this Court would be denying the Republic's due process right to present its defenses in the arbitration.

In a related Section 1782 proceeding where the Republic sought discovery from one of

6

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

Chevron's environmental experts, the Fifth Circuit asked and affirmatively answered the question, "Why shouldn't sauce for Chevron's goose be sauce for the Ecuador gander as well?" *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013).  The emphatic answer is that it should be here as well.  Chevron has obtained extensive discovery across the United States from numerous experts and fact witnesses to aid its prosecution of the BIT Arbitration.  Chevron cannot then turn around and change its positions to say the BIT Arbitration is no longer a valid proceeding which the Republic has a right to defend so as to try to deny the Republic equal access

## V. Judge Kaplan Was Prevented By Chevron And By The Lago Agrio Plaintiffs' Lack Of Resources From Seeing A Significant Amount Of Evidence

Chevron successfully applied for protective orders covering substantial discovery it was forced to produce to the Republic in successive 1782 actions.  Some of these protective orders have dissolved pursuant to their own terms upon Chevron's exhaustion of its appellate rights.  This evidence, often recorded on video, explicitly disproves certain of Chevron's claims (and calls into question certain of Judge Kaplan's rulings).  For example, Chevron and Judge Kaplan posit that if a particular document (*i.e.*, Plaintiffs' "Fusion Memo" detailing the merger of Chevron and Texaco) does not appear in the 200,000 page Lago Agrio record, but some of its text (240 words) appears in Judge Zambrano's Judgment, then the Plaintiffs must have "ghostwritten" the Judgment. *Chevron Corp. v. Donziger*, 974 F. Supp.2d 362, 492-93 (S.D.N.Y. 2014).  But Chevron ignores—and kept from Judge Kaplan—contemporaneous email and video evidence actually showing that the Fusion Memo was in fact properly submitted to the Lago Agrio court at a well site inspection on June 12, 2008.

**First**, uncontroverted evidence shows that the Plaintiffs always intended to submit the Fusion Memo and its accompanying exhibits to the Court.[12]  **Second**, uncontroverted evidence shows that the Plaintiffs targeted June 12, 2008 as their submission date, and did in fact conduct a presentation

---

[12]   Ex. 11, Email from J. Sáenz to S. Donziger (Nov. 15, 2007). Mr. Sáenz initially writes: "Colleagues, here's the first version of the famous merger memo, for your review and comments." Mr. Donziger then asks:  "The idea is that this is the only document we file?" Mr. Sáenz responds: "This document, along with all of the attached documents it mentions."

7

and submit documents to the Court on that date at the inspection of a well in Aguarico.[13]  **Third**, uncontroverted evidence shows that all of the exhibits cited in the Fusion Memo are found in the Court's records from that day, June 12, 2008.[14]  **Fourth**, uncontroverted evidence shows that the section of the official record for June 12, 2008, which contains the Fusion Memo's exhibits, also contains pagination errors and, contrary to court rules, was not sequentially numbered.[15]  Certain blocks of pages from the relevant portions of the record were unnumbered, while other portions of the record were out of order and erroneously alternated back and forth with pages that should have appeared roughly 60,000 pages earlier in the record.[16]  Such evidence gives rise to the irrefutable fact that on the day of the Fusion Memo's submission, the Court's docketing process was error-laden, and that the Memo was submitted on that day, just not docketed.

The Republic has presented all of this evidence and much more in its filings in the BIT Arbitration.[17]  Chevron has presented no response despite its opportunity to do so.  Instead Chevron has adopted a strategy whereby whenever the Republic refutes its allegations it simply makes new ones.

The point here is not that this Court should rule on merits issues like these that are now before the arbitral tribunal.  Indeed, the law is to the contrary.  The point instead is that the parties must present and adjudicate their claims in the foreign proceeding for which the discovery is sought.  The 1782 court is merely the instrument to ensure that the parties are granted access to the relevant evidence, thus enabling them to present such evidence to the foreign forum.

---

[13]   Ex. 12, Email from J. Sáenz to S. Donziger (Jun. 9, 2008); Ex. 13, Lago Agrio Record, Cuerpo 1309 at 140787-814 (Acta from JI of Aguarico 2); Ex. 14, Email from G. Erion to S. Donziger (Jun. 13 2008).

[14]   Ex. 15, Lago Agrio Record, Cuerpo 1308 at 140701 ("Protocolización" noting submission by Pablo Fajardo at the inspection site and attaching the Fusion Memo exhibits).

[15]   Ex. 16, Lago Agrio Record, Cuerpo 1309 at 140716-786 (including unnumbered pages).

[16]   *See, e.g.*, Ex. 17, Lago Agrio Record, Cuerpo 1439 at 153734-737 (alternating with pages from roughly 60,000 pages earlier in the record).

[17]   Ex. 18, Republic of Ecuador Counter-Memorial on the Merits (Track 2) (Feb. 18, 2013) at § III.C; Ex. 19, Republic of Ecuador Counter-Memorial on the Merits (Track 2) (Feb. 18, 2013) Annex D; Ex. 10, Republic of Ecuador Rejoinder on the Merits (Track 2) (Dec. 16, 2013) at § IV.

8

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

**VI.   Chevron's Predecessor's Pollution Of The Oriente Is Very Real And Continues To Cause Harm, Debunking Any Claims That The Republic Acts In Bad Faith By Defending Its Courts' Consideration Of The Environmental Claims**

Pivotal to any determination of bad faith by the Republic—*i.e.*, that the Republic is improperly defending its courts' judgment that Chevron should pay for the needed remediation of the environmental contamination caused by its predecessor—is a determination that the pollution in the Oriente caused by Chevron's predecessor is not real and is not causing harm. This is an issue that Judge Kaplan explicitly *excluded* from the RICO Trial but which is squarely at issue in the BIT Arbitration. *Chevron Corp. v. Steven Donziger*, 974 F. Supp.2d 362, 385 (S.D.N.Y. 2014); Ex. 18, Republic of Ecuador Counter-Memorial on the Merits (Track 2) (Feb. 18, 2013) at § II.A; Ex. 10, Republic of Ecuador Rejoinder on the Merits (Track 2) (Dec. 16, 2013) at § II.D.2.a.

Among other findings, the Republic has provided evidence to the Tribunal showing:

- Discovery obtained from Chevron's U.S-based experts has shown the extent to which Chevron went to hide its contamination during the Lago Agrio judicial proceeding. As just one example, Chevron conducted pre-inspections at nearly all of the sites to be inspected by the Ecuadorian court and then used the information obtained from that preliminary sampling to pre-determine where it was (and was not) safe to sample during the official proceedings. In this way, Chevron systematically sought to sample at depths where it could avoid the detection of pollution. Chevron similarly sampled upstream when it knew downstream was contaminated, and it sampled outside of drainages when it knew those drainages were contaminated.[18]

- Internal correspondence among Chevron's various in-house and testifying experts (and, indeed, a comparison of its experts' pre-inspection and judicial inspection data and reports) amply demonstrate that Chevron's "game plan," which was embodied in self-styled "Playbooks," was to manipulate its judicial inspection sampling test results (required to be filed with the Court) by its pre-inspection results (not filed with the Court). The inescapable conclusion is that, while Chevron represented to the Lago Agio Court that its judicial investigation results were statistically "representative" of each site inspected, it knew that its sampling and analytic techniques were anything but random.[19]

- During the Judicial Inspections conducted by the court, Chevron's experts found that certain compounds (called PAHs) exceeded Ecuadorian standards: the carcinogens benzo(a)pyrene and benzo(a)anthracene at 50 percent of the sites; pyrene at 90 percent of the sites; and naphthalene at 82 percent of the sites.[20]

The Republic's environmental experts have recently confirmed that widespread

---

[18]   Ex. 10, Republic of Ecuador Rejoinder on the Merits (Track 2) (Dec. 16, 2013) at § II.D.2.a.

[19]   *Id.*

[20]   Ex. 20, LBG Expert Rpt. (Feb. 18, 2013) at § 3.3.1.

9

contamination caused by Chevron's predecessor continues to exist and to affect the people of the Oriente.[21]  Not only do the Republic's experts' data confirm contamination, Chevron's own data confirmed it in 2004-2007, notwithstanding its dedicated effort to avoid sampling at contaminated locations.  These data echo the December 2008 concession by Chevron's longtime spokesman Kent Robertson that Chevron does not deny "the presence of pollution and we don't deny that there were impacts."[22]  And at the Sacha Norte 2 Judicial Inspection, Chevron's attorney Adolfo Callejas conceded:  "Here, we already state in advance that harm exists, that there is contaminating material."[23]  And before that, Fugro McClelland and HBT Agra, the auditors responsible for assessing TexPet's impact on the Oriente, confirmed widespread contamination in their respective reports of 1992 and 1993.[24]  These concessions are hardly surprising; to the contrary, they merely reaffirm still-earlier conclusions reached by Harvard Medical School doctors, National Resource Defense Council researchers, and many others.[25]

Regardless of the 20-year delay that Chevron has engineered in the adjudication of its liability, the Lago Agrio Court's Judgment, as affirmed in part by Ecuador's National Court, is correct in substance as it relates to findings of liability for pollution.  The judges who sequentially oversaw the Lago Agrio Litigation reviewed massive amounts of evidence, interviewed many residents of the Oriente, and directly observed the contamination from TexPet's operations that continues to affect people in the Oriente.  The human health impacts and the damage to the environment affecting the Lago Agrio Plaintiffs are described in detail in the expert reports from the Republic's experts.  The experts' findings are corroborated by the prior testimonies during the Lago Agrio trial and in interviews conducted by Chevron with the residents in the affected areas.  The

---

[21]   Ex. 21, LBG Rejoinder Expert Report (Dec. 16, 2013) at § 2.2.2.2.

[22]   Ex. 22, *Rainforest lawsuit against Chevron gears up*, LOS ANGELES DAILY NEWS (Dec. 20, 2008).

[23]   Ex. 23, Sacha Norte 2 JI Acta at 2.

[24]   *See* Ex. 18, Respondent's Track 2 Counter-Memorial on the Merits ¶¶ 70-82.

[25]   Ex. 24, Letter from Texaco to NRDC (Dec. 27, 1990); Ex. 29, NRDC's Environmental Allegations; Ex. 25, *Oil: A Life Cycle Analysis of its Health and Environmental Impacts* (Paul R. Epstein & Jesse Selber, eds., Harvard Medical School March 2002).

10

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

weight of the evidence is overwhelming. Chevron's predecessor's contamination has caused and continues to cause massive human health and environmental impacts on the Oriente.

## VII.   Chevron's Allegations Of The Republic's Bad Faith Are Baseless

Chevron points to alleged bad faith actions by the Republic in other proceedings as justification for barring further discovery in this action. None of those allegations regarding other actions, even if true, justifies denying the Republic's Motion to Compel in this action.

First, Chevron claims that the Republic violated protective orders because Steven Donziger, the Lago Agrio Plaintiffs' lawyer, filed in RICO an unredacted copy of the Republic's Counter-Memorial from the arbitration.[26] In fact, the Republic has operated for several years under multiple protective orders covering hundreds of thousands of documents and data. A single error was made. To be clear, it was the Republic—not Chevron—that discovered this one error, sought immediately to retrieve the document, alerted Chevron's counsel to the error, and worked together with Chevron (over the objections of Steven Donziger) to remedy the error.[27] Under all these circumstances, not even Chevron alleged bad faith at the time. That Chevron does so now is itself bad faith.

Second, Chevron points to emails among various members of the executive branch in Ecuador, including the President, that it supposedly obtained from a woman who claimed to have received them anonymously. Chevron brought these documents to Judge Kaplan, who instructed a Magistrate to review them. That Magistrate, in turn, flatly rejected Chevron's knee-jerk contention that they reflected a crime or a fraud. Ex. 27, *Chevron Corp. v. Donziger*, No. 11-cv-00691, Dkt. 1552 (Oct. 15, 2013). Nor has there been any allegation, let alone any finding by any court, that the Republic's alleged receipt of any document violated any obligation applicable to the Republic.

Third, Chevron claims that the Lago Agrio Plaintiffs released Chevron's documents to two newspapers in Ecuador. Even if the Lago Agrio Plaintiffs did release the documents—and there is

---

[26]  At all times the Republic has protected from disclosure documents and data received as part of any protective order. To ensure that its arbitral submissions may be accessible to the public (including the press), the Republic took the step of redacting its submissions, consistent with the terms of the protective orders. On a single occasion, a *nonredacted* version of one submission was provided. Upon its own discovery of the mistake, the Republic took immediate remedial steps.

[27]  Dkt. 70-44, Letter from G. Ewing to E. Dettmer and E. Monagas (Oct. 4, 2013); Ex. 26, Letter from E. Bloom to S. Donziger (Sept. 16, 2013).

11

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

no proof that they did—that is immaterial to the Republic. The Republic did not release the documents so their release does not demonstrate bad faith by the Republic.

Finally, Chevron claims that the Republic's "disregard" for the BIT Tribunal's interim orders is yet more evidence of the Republic's bad faith actions in the foreign proceeding underlying this discovery action. But the Republic *has complied* with the Tribunal's interim orders to the extent it is able under both its domestic and international obligations. As explained in successive Ecuadorian court decisions,[28] the Republic was bound by competing obligations—Human Rights Conventions to which it is a party and the Tribunal's interim orders. Under Ecuador's domestic laws, the former has priority. This is a situation almost identical to that in *Medellín v. Texas* where the U.S. Supreme Court recognized that U.S. law was in tension with an interim award but declined to find bad faith. 552 U.S. 491 (2008). In both instances an international tribunal sought to impose interim obligations with which a sovereign, under its laws, could not fully comply. In neither instance has there been a finding of bad faith by the tribunal. Further, the Republic has requested that the Tribunal reconsider those interim orders based on both factual and legal grounds.[29] The Tribunal has agreed to consider the Republic's request in a third phase of the arbitration not yet scheduled.[30]

Just like Chevron's alleged grievances against the Republic, the Republic, too, has a long list of grievances against Chevron.[31] But Chevron's recriminations, and the Republic's own concerns about Chevron's behavior, miss the point of the instant exercise.

The question instead presented by this Court's May 22 Order is whether the Applicants in this 1782 action seek this particular discovery to further a fraud on the courts. Nowhere in its papers has Chevron addressed this question. Judge Breyer has already found that the Republic seeks this evidence in aid of its *defense* of an arbitration commenced *not* by the Republic, but by Chevron. The

---

[28]   Ex. 30, Ecuadorian Case No. 21100-2003-0002, Box No. 63, Order dated July 29, 2013.

[29]   Ex. 31, Respondent's letter to the Tribunal (Mar. 1, 2013).

[30]   The merits of the arbitration have been divided into three tracks. Track 1 dealt with Chevron's contractual claims under the 1995 Settlement Agreement. Track 2 deals with Chevron's due process arguments and the Republic's environmental defense. Track 3 will deal with all quantum issues depending on the results of Track 2. Track 3 will also address the Republic's request to reconsider the Tribunal's interim awards.

[31]   Ex. 10, Republic of Ecuador Rejoinder on the Merits (Track 2) (Dec. 16, 2013) at § I.

12

Republic is entitled to present a defense in the arbitration. And this 1782 action is intended to facilitate the Republic's defense no less and no more than Chevron's 1782 discovery has facilitated its development of its arbitral claims. Chevron offers no basis for this Court to conclude that the Republic seeks this evidence for any reason other than the reason Judge Breyer has already found.

### VIII. Mason's Argument That Discovery Should End Because A Deposition Was Taken Should Be Rejected

When the Republic scheduled and took Mason's deposition in October 2013, it had already been waiting for more than two years for a ruling on the motion to compel; it had requested expedited consideration by this Court and advised this Court of the imminent deadlines in the Arbitration, and it then faced an impending November deadline which was scheduled to be its final submission on the merits in the BIT Arbitration. *See* Dkt. 64, Joint Status Report. Given the Court's silence notwithstanding the Republic's multiple requests for expedited consideration, *see, e.g.*, Dkt. 61, Letter of Aug. 13, 2012; Dkt. 66, Letter of Oct. 16, 2013, the Republic had no choice but to proceed with the deposition or else face the prospect of losing its opportunity to obtain any deposition at all. But as was the case in another related 1782 proceeding before this Court, any "newly produced documents warrant additional deposition time," Ex. 28, *In re Republic of Ecuador* (Kelsh), Case No. 11-mc-80171-CRB (NC) (Jan. 15, 2013), especially now that the Tribunal has substantially enlarged the schedule.[32]

### CONCLUSION

The Republic is mindful that this Court has granted Chevron the right of reply, notwithstanding that it was the Republic that filed both the 1782 Application and the motion to compel, and therefore would ordinarily be afforded last word on what is a *de facto* defense to both. We are also mindful that this action has been pending since May 2011 and the motion to compel has been fully briefed since September 2011. If not for Chevron's late request of the arbitral tribunal to again shift the factual underpinnings of its arbitral claims, thus resulting in extended briefing deadlines in the arbitration, the Republic's right to discovery would have been long ago eliminated

---

[32] Even if the Court were to deny additional deposition time, that has no bearing on whether the Court should order Mason to produce documents they withheld in violation of this Court's earlier order granting discovery.

13

APPLICANTS' OPPOSITION TO RESPONDENTS' BRIEFS REGARDING BAD FAITH
IN RE APPLICATION OF DR. DIEGO GARCÍA CARRIÓN, 11-MC-80110-CRB-NMC

by the three-year delay in this proceeding.  The Republic respectfully requests that this Court promptly schedule a hearing and rule on the Republic's Motion to Compel and grant any other relief the Court deems right and just so that any aggrieved party may timely lodge an objection to Judge Breyer or otherwise seek appellate review.

Dated: July 7, 2014                           Respectfully submitted,


                                      WINSTON & STRAWN LLP

                                      By:  */s/ Eric W. Bloom*
                                                  Eric W. Bloom
                                                  Gregory L. Ewing

Attorneys for Applicants, Dr. Diego García Carrión,
The Attorney General of The Republic of Ecuador, and
The Republic of Ecuador